**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

No. 11-1534

———————

UNITED STATES OF AMERICA

v.

ANTWAN SHAIRD,
                              Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cr-00356-001)
District Judge:  Honorable Juan R. Sanchez

———————

Argued February 6, 2012
Before:  SLOVITER, VANASKIE, and GARTH, *Circuit* *Judges*

(Opinion Filed:  March 6, 2012)

———————

Robert Epstein   (Argued)
David M. Kozlow
Federal Community Defender Office for the
   Eastern District of Pennsylvania
Philadelphia, PA  19106

        Attorneys for Appellant

Elizabeth F. Abrams
David L. Axelrod   (Argued)
Office of United States Attorney
Philadelphia, PA  19l06

        Attorneys for Appellee

---

OPINION

---

SLOVITER, *Circuit Judge*.

A jury convicted Appellant Antwan Shaird of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) ("Count I"), possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count II"), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) ("Count III"). On appeal, Shaird challenges two rulings by the District Court. First, Shaird argues that the District Court erred in admitting his written confession to possession of marijuana. Second, he contends that the District Court erred in excluding as inadmissible hearsay a portion of the Government's trial memorandum that Shaird sought to introduce at trial.

## I.

On the night of February 7, 2009, the Philadelphia Police Department executed an arrest warrant for Shaird at his residence. A Philadelphia police officer, Charles Zul, later testified that during the execution of the warrant he saw Shaird open the basement door and throw a black handgun down the basement stairs. Officer Zul subsequently recovered a pistol from the basement. Returning later with a search warrant, police officers recovered a number of sandwich bags containing a total of twenty-six grams of marijuana and two digital scales.

2

During the execution of the arrest warrant, police took three men into custody, Shaird and two other men found in the house. Once at the police station, while the three men were still sitting handcuffed in the police transport wagon and before they had been given *Miranda* warnings,[1] Detective Michael Zanetich approached and said, "It's going to suck for all three of you [to] go down for one bag of weed." App. at 13. The two men with Shaird responded to this remark by saying to Shaird, "'Twan, you know that's your weed, fess up for it." App. at 196. Detective Zanetich then asked Shaird directly, "Antwan, is that true?" App. at 197. Shaird responded "yes." *Id.* Detective Zanetich asked Shaird if he would be willing to "come upstairs and tell me that?" *Id.* Shaird said "yes." *Id.*

Detective Zanetich then escorted Shaird into the police station, placed him in a holding cell, and *Mirandized* him by giving him a printed document setting out his *Miranda* rights and having Shaird read a portion of the document aloud and sign it. After being *Mirandized*, Shaird signed a written confession admitting that the marijuana was his but denying possession of the gun. In total, about thirty minutes elapsed between the time Detective Zanetich first spoke with Shaird outside the police station and the taking of the written confession.

Shaird was indicted on May 26, 2009. While in pretrial custody at the Federal Detention Center in Philadelphia, Shaird wrote a letter to a friend in which he discussed his case and stated, "All they can get me with is that G--." App. at 563. On March 12, 2010, a jury convicted Shaird on all three counts.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

**II.**

After conducting a suppression hearing, the District Court ruled that Shaird's initial oral confession was inadmissible under *Miranda*, but his subsequent written confession was admissible because Detective Zanetich "mistakenly believed his statement to the men was not equivalent to a question for *Miranda* purposes." App. at 14. As such, the District Court found that the failure to administer *Miranda* warnings before the first confession was not deliberate and admitted the subsequent written confession. Shaird challenges both this ruling and the District Court's later decision to exclude from evidence a portion of the Government's trial memorandum.[2]

**III.**

As this court has explained, the standard governing the admissibility of a post-*Miranda*-warning confession derived in part from a prewarning interrogation varies on whether the initial failure to warn was deliberate or inadvertent. *United States v. Naranjo*, 426 F.3d 221, 231-32 (3d Cir. 2005). If the initial failure to warn was a deliberate attempt to undermine the effectiveness of the *Miranda* warning, admissibility is determined by applying the test set forth by Justice Kennedy in his concurrence in *Missouri v. Seibert*, such that "'postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made.'" *Id.* (quoting *Missouri v. Seibert*, 542 U.S. 600, 622

---

[2] We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

(2004) (Kennedy, J., concurring)). The Government bears the burden of showing that a confession is admissible. *Brown v. Illinois*, 422 U.S. 590, 604 (1975).

The parties dispute the applicable standard of review for the District Court's finding that the failure to warn was not deliberate. The Government contends that the finding of non-deliberateness should be reviewed for clear error. On the other hand, Shaird contended at oral argument that in this context deliberateness is a question of law subject to de novo review. We need not resolve that dispute here, however, because, even applying clear error review, the District Court's finding that Detective Zanetich's failure to warn was inadvertent cannot stand. *But cf. Naranjo*, 426 F.3d at 232-33 (remanding in order for district court to make a "finding" with respect to deliberateness).

"Factual findings are clearly erroneous only where the appellate court is left with the definite and firm conviction that a mistake has been committed. It is not enough that we would have reached a different conclusion as the trier of fact; as long as the district court's factual findings are plausible when viewed in light of the entirety of the record, we must affirm." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 257-58 (3d Cir. 2008) (internal citations and quotation marks omitted).

We conclude that the District Court's finding that the omission of warnings before the first interrogation was inadvertent is not plausible in light of the entire record. First, nothing in the circumstances surrounding the interrogations suggests the occurrence of a mistake or explains why a warning could not be given prior to any interrogation. The two interrogations were conducted in or around the police station, in close temporal

proximity, and by the same officer, Detective Zanetich.[3] The Government does not contend that the failure to warn was a result of Detective Zanetich's inexperience. *Cf. Naranjo*, 426 F.3d at 232 (suggesting that a failure to warn would not be deliberate where it resulted from a "rookie mistake"). To the contrary, Detective Zanetich, a seven-year veteran of the Philadelphia Police Department, testified that he knew *Miranda* warnings were required before questioning suspects and that he knew the suspects in the van had not been warned. Critically, he testified that his conversation with the men in the van was a deliberate strategy to elicit a confession: "I was just breaking chops to see what would happen, you know, just – *you* know, *because usually you tell all – three guys go down for a little bit of weed, one of them will want to fess up*." App. at 202 (emphasis added). Moreover, even if Detective Zanetich had been confused about whether a statement, as opposed to a question, could trigger *Miranda* protection, this alone cannot mean that the violation of Shaird's *Miranda* rights was non-deliberate, because immediately after Detective Zanetich made the statement to the men, he asked a direct question: "Antwan, is that true?" App. at 197. It was this question that elicited Shaird's oral confession, and upon hearing it, Detective Zanetich immediately asked Shaird if he would be willing to repeat the confession inside the station. In so doing, Detective Zanetich set up the second interrogation as a mere continuation of the first one.

In light of the surrounding circumstances and Detective Zanetich's testimony of his own actions and motivation, the District Court's finding of non-deliberateness cannot

---

[3] A second detective was present during the second interrogation, but Detective Zanetich was the one asking the questions and recording Shaird's answers.

stand. Detective Zanetich's testimony compels the conclusion that he knew that *Miranda* prohibited the unwarned interrogation of the men in the van, but that he questioned them anyway in the hope that one of them would "fess up." App. at 202.[4]

Accordingly, we conclude that the District Court's finding that the initial unwarned interrogation was not deliberate was clearly erroneous. We thus consider whether adequate curative measures were taken to ensure that the second confession was voluntary. As Justice Kennedy noted, the strategy of deliberately withholding *Miranda* warnings until after a suspect has already confessed "is based on the assumption that *Miranda* warnings will tend to mean less when recited midinterrogation, after inculpatory statements have already been obtained." *Seibert*, 542 U.S. at 620 (Kennedy, J., concurring). Where, as here, an officer deliberately undermines the effectiveness of the - *Miranda* warning by conducting an initial unwarned interrogation, the postwarning confession must be excluded unless appropriate curative measures were taken before the

---

[4] Judge Garth would affirm the judgment of the District Court which did not admit into evidence the oral statement of Shaird, but which did admit the confession Shaird gave after he had been formally *Mirandized*. Judge Garth would do so because the District Court found as a matter of fact that there was no deliberate intent by Detective Zanetich to evade *Miranda* when he spoke with Shaird and his two companions in the van. As a consequence, Judge Garth believes that *Oregon v. Elstad*, 470 U.S. 298 (1985), governs the resolution of this case, rather than *Seibert*, which had recognized that there had been a deliberate intent to evade *Miranda* on the part of the officer who questioned the defendant, Seibert.

Inasmuch as we must defer to District Court Judge Sanchez's finding of fact which Judge Garth holds was not clearly erroneous, *see United States v. United States Gypsum Co.*, 333 U.S. 364 (1948), Judge Garth would affirm Shaird's convictions and sentence.

7

postwarning confession was made. *Naranjo*, 426 F.3d at 232. Appropriate "'curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver.'" *Id.* (quoting *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring)). Possible curative steps include a "substantial break in time and circumstances between the prewarning statement and the *Miranda* warning" and an explanation that the prewarning custodial statement is likely inadmissible. *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring).

Neither these nor any other adequate curative steps were taken in this case. Both the prewarning and postwarning interrogations were conducted by Detective Zanetich in similar settings in police custody – first while Shaird was sitting handcuffed in the police van outside the station, and later in an interrogation room inside the station – and with only thirty minutes between them. Moreover, there is no evidence that Shaird was informed prior to giving his written confession that his unwarned statement was likely inadmissible. As Detective Zanetich acknowledged in his testimony, the two interviews were part of the same "prompt and . . . continuous sequence," App. at 209, and we can find nothing in the circumstances surrounding the interrogations that would clearly alert a detainee in Shaird's position that the *Miranda* warning marked a significant change between the legal consequences of the two periods of questioning. Because Detective Zanetich's failure to administer a *Miranda* warning before he questioned the men in the van was deliberate and because he failed to take appropriate curative measures to ensure

8

that Shaird's second, written confession was voluntary, the District Court's decision to admit that confession was error.

Does this error require overturning Shaird's convictions? Because the District Court's error was constitutional in nature, it is only harmless if "it can be 'prove[d] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Waller*, 654 F.3d 430, 434 (3d Cir. 2011) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The Government concedes that admission of the confession was not harmless with respect to Counts I and II, the charges of possession of marijuana with intent to distribute and possession of a firearm in furtherance of a drug trafficking crime. The Government contends, however, that the admission of the written confession was harmless with respect to Count III, possession of a firearm by a convicted felon. We agree.

The Government's evidence with respect to Count III, the felon in possession count, was strong and almost entirely separate from that presented with respect to the marijuana. Significantly, Shaird's written confession was not part of the Government's case with respect to the firearm. Rather, the Government's case on Count III rested on two key pieces of evidence: Officer Zul's eyewitness testimony that he saw Shaird pull the gun from his waistband and throw it down the stairs and Shaird's written admission that "[a]s far as my case go [sic] . . . . [a]ll they can get me with is that G--." App. at 563. Taken together, these two pieces of evidence were sufficient to sustain Shaird's conviction on the felon in possession count. Neither of them is affected in any way by the improper admission of Shaird's written confession to possession of marijuana.

9

Shaird argues, however, that the admission of the written confession to marijuana possession is not harmless with respect to the felon in possession charge because the Government's expert on drug trafficking drew links in his testimony between the distribution of marijuana and the possession of firearms. We reject this argument. The Government's expert did mention in passing the connection between drugs and guns generally, but he did not refer to Shaird's written confession nor suggest that the confession was directly probative with respect to possession of the firearm.

In light of all the evidence presented at trial, we are convinced that the jury's decision to convict on Count III reflects that the jury was persuaded by Officer Zul's eyewitness testimony and Shaird's own highly suggestive written statement that "all they can get me with is the G--." App. at 563. It follows that Shaird's confession to possession of marijuana did not contribute to his conviction for possession of a firearm by a convicted felon.

## IV.

Shaird also raises as a second issue that the District Court erred in precluding him from introducing a portion of the Government's trial memorandum as an admission of a party opponent.

In its trial memorandum, the Government stated: "At South Detectives, Philadelphia Police Detective Zanetich met the transport wagon outside South Detectives. There, Detective Zanetich asked the men, who were all sitting together, who had the gun." App. at 81. At trial, Detective Zanetich testified that he did not ask the men about the gun while they were sitting in the van. Shaird contends that the statement from the

10

trial memorandum is relevant to rebut this testimony and indirectly undercut Officer Zul's testimony that he saw Shaird with the gun. According to Shaird's theory, Detective Zanetich would not have asked the men in the van who had the gun if he already knew from Officer Zul that the gun was in Shaird's possession. Shaird contends that the statement is not hearsay because it is an admission of a party opponent under Federal Rule of Evidence 801(d)(2). The Government responds that the statement is not relevant and that, even if it were relevant, it is not an admission of a party opponent and is thus inadmissible on hearsay grounds. There is no need for us to resolve these questions, because even assuming *arguendo* that the District Court erred in excluding the evidence, that error was harmless.

Nonconstitutional error, like that alleged here, is harmless "where it is highly probable that the error did not contribute to the judgment and the court has a sure conviction that the error did not prejudice the defendant." *United States v. Vitillo*, 490 F.3d 314, 329 (3d Cir. 2007) (quotation marks and citation omitted).

The admission of the statement from the Government's trial memorandum could not have significantly undercut the Government's evidence. Moreover, the evidence is largely cumulative of other evidence already in the record. Indeed, it is undisputed that, while Detective Zanetich was taking Shaird's written confession inside the police station, Detective Zanetich repeatedly asked Shaird about the gun. As such, evidence suggesting that Zanetich also asked the men in the van about the gun would be largely cumulative of evidence already in the record. Thus, the statement from the Government's trial memorandum had, at best, extremely limited probative value, and could not, in any

11

significant way, have undercut the Government's strong evidence with respect to Count III. Under these circumstances, even assuming *aguendo* that the District Court erred in barring the introduction of the evidence, that error was harmless because it is highly probable that the error did not contribute to Shaird's conviction.

## V.

For the foregoing reasons, we reverse the judgment of conviction with respect to Counts I and II and remand for further proceedings regarding the conviction of Count III consistent with this opinion.